UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION, EAST ST. LOUIS, ILLINOIS

| | | |
|---|---|---|
| RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | **Plaintiff Requests Trial by Jury** |
| v. | ) ) | Case No. 21-cv-__152___ |
| KATHY L. NODINE, MADISON COUNTY, ILLINOIS, and JOHN D. LAKIN, as the Sheriff of Madison County, Illinois. | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendants, KATHY L. NODINE, MADISON COUNTY, ILLINOIS, and JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, states the following:

### I.    PARTIES

1.    RANA SCHMIDT is a resident of Glen Carbon, Madison County, Illinois.  She is the duly appointed Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased.  Ms. SCHMIDT is the mother of the decedent and brings this action on behalf on the Decedent's next of kin.

1

2.      At all times relevant to the issues raised in this Complaint, ELISSA A. LINDHORST, deceased, (hereafter ELISSA), resided in Glen Carbon, Madison County, Illinois. ELISSA, born on April 30, 1991, died while incarcerated as a pretrial detainee at the Madison County Jail on February 24, 2020.

3.      At all times relevant to the issues raised in this Complaint, the Defendant, KATHY L. NODINE (hereinafter NODINE) worked as a jail officer for the Madison County Sheriff's Department.  Upon information and belief, NODINE is a resident of Madison County, Illinois.

4.      MADISON COUNTY, ILLINOIS (hereinafter the COUNTY) is an Illinois County, formed pursuant to the Illinois Counties Code, 55 ILCS 5/1-1001 through 5/7-1001.  At all times relevant to the issues in this Complaint, the COUNTY operated a jail facility in Madison County, Illinois, and employed deputies, jail officers, medical staff, and other personnel to staff and operate the facility, consistent with policies and procedures developed by the COUNTY'S Sheriff's Department.

5.      The Defendant, JOHN D. LAKIN (hereinafter "LAKIN"), is the duly commissioned Sheriff of Madison County, Illinois.  Upon information and belief, LAKIN is a resident of Madison County, Illinois.

## II.      JURISDICTION

6.      This Court has jurisdiction over the subject matter of this Complaint where the Complaint arises under the Constitution and Statutes of the United States and, therefore presents a federal question under 28 U.S.C. § 1331 and where the Complaint seeks relief under an Act of Congress providing for the protection of civil rights, 28 U.S.C. § 1343(4).

2

7.      This Court has supplemental jurisdiction over the Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case and controversy.


### III.    VENUE

8.      Pursuant to 28 U.S.C. § 1391(b), venue for this action is proper in the United States District Court for the Southern District of Illinois, East St. Louis Division, in that all of the events or omissions giving rise to this claim occurred in Edwardsville, Madison County, Illinois, which is located in the Southern District of Illinois


### IV.    BASES FOR CLAIM

9.      The Plaintiff brings her claims on behalf of the decedent's estate and the decedent's next of kin pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, and the Illinois Wrongful Death Act, 740 ILCS 180/0.01-180/2.2, respectively.

10.     The Plaintiff brings her federal claims against the Defendants pursuant to 42 U.S.C. § 1983 for violations of ELISSA'S rights under the Fourteenth Amendment to the United States Constitution, which prohibits "deliberate indifference to the serious medical needs of pretrial detainees." *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir. 1991).  The COUNTY and LAKIN are named pursuant to *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978).

11.     The Plaintiff brings her state law claims pursuant to Illinois tort law against the Defendants for willfully and wantonly denying ELISSA medical care while detained at the Madison County Jail.  LAKIN is further named as a Defendant pursuant to 55 ILCS 5/3-6016,

which provides that "the sheriff shall be liable for any neglect or omission of the deputies of his

office, when occasioned by a deputy . . . in the same manner for his or her own personal neglect

or omission."

## V.    FACTS COMMON TO ALL CLAIMS

### A.    ELLISA'S INCARCERATION AND DEATH

12.    Prior to February 20, 2020, ELISSA had long struggled with addiction issues.

13.    On February 20, 2020, ELISSA appeared in Granite City, Illinois, for an

appearance in court.

14.    During her appearance, the presiding judge recognized ELISSA as having an

outstanding warrant and notified Madison County Sheriff deputies, who were working at the

Granite City Courthouse that day.

15.    The Deputies, Deputy Schneidewind and Deputy Saffell, responded to the Judge's

notification. Deputy Saffell confirmed the warrant by phone, determining that the warrant sought

ELISSA'S arrest for possession of a controlled substance.

16.    After confirming the warrant, Deputy Saffell took ELISSA into custody, "without

incident," placed her into his patrol vehicle, and transported her to the Madison County Jail.

17.    ELISSA arrived at the jail at about 4:38 PM on Thursday, February 20, 2020.

Once at the jail, Deputy Saffell remained present until ELISSA completed a body scan as part of

the intake process and then turned ELISSA over to jail staff, again, "without incident."

18.    During the booking process, consistent with Department policy, the booking

officer check ELISSA'S Booking History Report. That report revealed that ELISSA had

previously been booked in 2019, once for possession of a controlled substance and, a second time, for possession of methamphetamine.

19.    Consistent with Department Policy, the booking officer, conducted a search of ELISSA'S person and belongings, including the body scan witnessed by Deputy Saffell and a strip search.  Neither the search by Deputy Saffell at the time of the arrest nor the search during the booking process revealed contraband of any type, including drugs, alcohol, or other illicit substances, in ELISSA'S possession.

20.    Consistent with Department Policy, ELISSA completed an Initial Booking Questionnaire in which she reported no condition of ill health at the time she arrived and completed the Questionnaire.

21.    However, shortly after booking, ELISSA became ill, began vomiting, and requested aid from the Defendant, NODINE.

22.    The Defendant, NODINE, observed that ELISSA had become ill and was vomiting.

23.    As a result of ELISSA'S illness, NODINE, claims to have completed a sick slip form, seeking medical assistance for ELISSA.  However, despite Department policy that requires such slips to be maintained in the detainee's file, no sick slip, dated February 20, 2020, is in ELISSA'S file.

24.    According to NODINE, she submitted the sick slip on February 20, 2020, when ELISSA reported that she was withdrawing from fentanyl. NODINE also reported that she submitted the sick slip to the jail infirmary, which is required by Department policy.

25.    Pursuant to Department Policy, when a sick slip is submitted, the medical staff must decide if a detainee is to be seen and whether the detainee will be evaluated by a nurse or a

doctor. Where an exam is approved, that exam is to occur after the distribution of medicine is completed the following morning.

26.     No medical staff member evaluated ELISSA in response to the sick slip, if any, that NODINE claims to have submitted on February 20, 2020, and there is nothing in ELISSA'S file to suggest any consideration by the medical staff of ELISSA'S condition.

27.     Indeed, through February 21, February 22, and February 23, no jail officer, doctor, or medical staff member provided any medical evaluation or care of any type to ELISSA.

28.     After the Defendant, NODINE noted ELISSA to be vomiting on February 20, 2020, ELISSA'S condition continued to deteriorate; she continued to vomit, could not eat, and could not drink liquids throughout the remainder of her incarceration at the MADISON COUNTY jail, which ended with her death on February 24, 2020.

29.     During the interval between ELISSA requesting aide from Defendant, NODINE, on February 20, 2020, due to her deteriorating condition, ELISSA and her cell mates, Misty and Michelle, made repeated requests for medical assistance to multiple members of the jail's staff.

30.      Those jail officers, including NODINE, medical staff, and others employed by the COUNTY and on duty in the women's wing of the COUNTY'S jail facility from February 20, 2020 through February 24, 2020, acting willfully and wantonly and with a deliberate indifference to ELISSA'S serious and deteriorating medical condition, ignored the repeated pleas for help from ELISSA, Misty, and Michelle, failed to assess ELISSA, and failed to provide necessary medical care, which was at all times available to detainees at the jail.

31.     On the morning of February 24, 2020, Sergeant Hare of the Madison County Sheriff's Department found a handwritten note by Misty and Michelle pleading for assistance for ELISSA. Sergeant Hare found the note "in a trash container at the front of F4 which is utilized

by guards." A copy of the note written by Misty and Michelle is attached as Exhibit A to this complaint.

32.     On the morning of February 24, 2020, NODINE began her duty rounds at 6:00 AM. Shortly thereafter, she observed ELISSA lying on the floor of her cell near her toilet. Willfully and wantonly and with reckless and deliberate indifference to ELISSA'S condition, NODINE made no effort to check on ELISSA, assess her condition, or call for medical staff assistance.

33.     When NODINE made her next duty round, thirty minutes later, at or about 6:30 AM, she found ELISSA still laying in the same position. Willfully and wantonly and with reckless and deliberate indifference to ELISSA'S condition, NODINE made no effort to check on ELISSA, assess her condition, or call for medical staff assistance.

34.     Thirty minutes later, at or about 7:00 AM, NODINE again found ELISSA laying by her toilet, this time slightly rolled to one side. She noted ELISSA raising her head and noted ELISSA having vomit on her. Willfully and wantonly and with reckless and deliberate indifference to ELISSA'S condition, NODINE made no effort to check on ELISSA, assess her condition, or call for medical staff assistance.

35.     After completing her 7:00 AM duty round and without having checked ELISSA'S condition or called for medical staff assistance, NODINE began to distribute breakfast to the other inmates. Misty expressed her concern to NODINE about ELISSA'S condition and asked if she could give ELISSA her breakfast. Willfully and wantonly and with reckless and deliberate indifference to ELISSA'S condition, NODINE watched Misty take ELISSA her breakfast but did nothing herself to check on ELISSA or call for medical staff assistance.

36.     Some thirty minutes later, a little after 7:30 AM, NODINE began her duty rounds, again. This time, Nurse Bassett also began passing out morning medications to inmates in the same area of the jail where ELISSA had been laying on the floor by her toilet for over an hour and a half.

37.     While NODINE made rounds and Basset handed out meds, Misty and Michelle began yelling that ELISSA had stopped breathing. The two cell mates had carried ELISSA from her cell into the main detainee walkway, by the time that NODINE and Basset arrived.

38.     After ignoring ELISSA'S condition for more than three days and ignoring her grave condition on the morning of February 24, 2020 for over an hour and a half, the jail staff employed by the COUNTY and NODINE finally began to give attention to ELISSA'S deteriorating medical condition; NODINE by assisting Nurse Basset with cardio pulmonary resuscitation.

39.     Unfortunately for ELISSA, due to the deliberate indifference of NODINE and the other members of the COUNTY'S jail staff, ELISSA'S condition had progressed to the point of severe dehydration and she had aspirated her vomit, causing her lungs to become congested and inflamed.

40.     By the time that NODINE and the jail staff provided care to ELISSA, she could not recover from those injuries and, at 8:30 AM on February 24, 2020, Dr. Grant Gerdelman, M.D. pronounced her death.

41.     As a result of her death, at the request of the Madison County Coroner, Dr. Gershom Norfleet performed an autopsy. As part of the autopsy, Dr. Norfleet ordered toxicology of both cardiac blood and vitreous fluid. The toxicology analysis of the cardiac blood revealed

that ELISSA had a postmortem blood alcohol concentration of .045 g/100mL and amphetamine and methamphetamine concentration of 21 ng/mL and 23 ng/mL respectively.

42.     As a result of the autopsy and toxicology report, Dr. Norfleet determined the cause of ELISSA'S death to have been "Methamphetamine Intoxication." He noted, however, that the Methamphetamine intoxication caused cardiac dysrhythmia and that ELISSA had "acute congestion and edema" of the lungs, with "acute bronchopneumonia."

## B.     THE SETTING FOR ELISSA'S INCARCERATION

43.     In 2019, the National Institute for Drug Abuse reports 70,630 deaths from drug abuse, including "those caused by synthetic opioids other than methadone (primarily fentanyl)," which accounted for over 36,000 of those deaths.  According to the Centers for Disease Control, in the United States, "synthetic opioids other than methadone are the main driver of overdose deaths."

44.     In Illinois' fiscal year (SFY) 2018, methamphetamine-related offenses led to 1,017 Illinois Department of Corrections admissions. Methamphetamine-related admissions accounted for 4 percent of all admissions and almost 18 percent of all drug admissions that year.[48]  From SFY12 to SFY18, Illinois prisons experienced a 67 percent increase in the number of individuals admitted for a methamphetamine offense, rising from 967 individuals in 2012 to over 1,600 in 2018.[50]

45.     The Centers for Disease Control reports that, in Illinois alone, during 2018, over 2,700 people died as a result of drug overdose.

### C.    THE POLICIES AND REGULATIONS GOVERNING ELISSA'S INCARCERATION

46.    At all times relevant to the issues raised in this Complaint, the Madison County Sheriff's Office had in full force and effect its Policy number 1100, Co-Payment for Prisoner Medical Services. Under that Policy, the Sheriff's office recognized its obligation to "provide services to all detainees pursuant to and consistent with the Illinois Department of Correction-County Jail Standards."

47.    At all times relevant to the issues raised in this Complaint, the Illinois Department of Correction maintained its County Jail Standards, Ill. Admin. Code 20 § 701.5-701.280, governing the responsibilities of County jails throughout Illinois, including Madison County.

48.    The Illinois Department of Correction's County Jail Standards, §701.40(i)(3), requires Illinois jails to refer detainees for medical evaluation "[w]hen a detainee shows signs of or reports unusual physical or mental distress."

49.    The Illinois Department of Corrections County Jail standards, §701.90(b)(1), requires that a physician be available "to attend the medical and mental health needs of detainees."

50.    The Illinois Department of Corrections County Jail standards, §701.90(d)(1), requires the jail to provide a daily sick call and, under §701.90(d)(3), requires detainees with emergency conditions to "receive attention as quickly as possible, regardless of the sick call schedules."

51.    Under Madison County Sheriff's Office Policy number 1100.5(a), all deputies had an obligation to "dispense sick slips upon request and with each Medication Pass …[and] see that the slips are returned to the infirmary …."

52.     Under that same policy, 1100.5, Subsection (b), medical staff are to determine "when and if the prisoner should be seen on either the next Nurse Call or Doctor Call." The policy further requires that all sick slips were to be maintained in the detainee's medical file.

53.     Neither the COUNTY nor LAKIN developed any policy that defined when detainees should receive medical attention, other than upon the completion of a sick slip; that defined or provided guidance on when a medical condition should be determined to be an emergency; or that defined or offered guidance to officers concerning the signs or symptoms of drug withdrawal, dehydration, or other medical conditions that pose a threat of significant harm or to the life of detainees.

54.     Both the COUNTY and LAKIN failed to train jail employees to recognize serious medical conditions and failed to provide necessary training and guidance to jail employees in determining the need for necessary medical assistance.

### D.    MADISON COUNTY'S HISTORY OF ISSUES WITH DETAINEE SAFETY

55.     Madison County has a significant history of issues with detainee safety, including thirty-six suicide attempts and three successful suicides over the five years from 2005 through 2010. *See Pittman ex rel. Hamilton v. County of Madison, Ill.* 746 F.3d 766, 773 (2014)

56.     There have been many other incidents involving injuries to detainees since 2010. In 2017, an inmate smuggled narcotics into the Madison County jail, where three detainees, who consumed the drugs, required medical attention, including hospitalization, for their intoxication. www.riverbend.com/articels/details/three-femaile-madison-county-jail-inmates-treated-for-suspected-opioidbased-overdoses-20145.cfm.

57.     In 2016, an inmate beat to death another inmate. The injured victim of the beating did not receive assistance from jail officers for almost two hours before officers took any action to assist the victim. www.thetelegraph.com/new/article/Caught-on-camera-Inmate-beaten-to-death-12710270.php.

## VII.    COUNTS AGAINST KATHY L. NODINE

### COUNT I

### Wrongful Death, Pursuant to 42 U.S.C. § 1983

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, KATHY L. NODINE, states:

58.     Plaintiff adopts and realleges paragraphs 1-57 of this complaint as and for paragraph 58 of this Count I, as if said paragraphs were fully set forth herein.

59.     NODINE'S actions and course of conduct, were performed under color of State law, where her actions and conduct occurred in her role and within the scope of her employment as a jail officer at the Madison County Jail facility.

60.     Pursuant to the Fourteenth Amendments of the United States Constitution, pretrial detainees, including ELISSA, have a due process right to receive medical care adequate to the severity of their injures or illness.

61.     Pursuant to NODINE'S obligations as a jail officer, she owed a duty to ELISSA to prevent violations of ELISSA's Fourteenth Amendment due process rights under the United

States Constitution, including a duty to avoid reckless or deliberate indifference to ELISSA'S medical needs.

62.     Through NODINE'S reckless and/or deliberate indifference to the severity of ELISSA's condition, which was objectively obvious, and her purposeful failure to call for a medical evaluation of ELISSA, which was available to ELISSA at the Madison County Jail, NODINE violated her duty to ELISSA.

63.     As a direct and proximate result of the reckless or deliberate indifference of NODINE, ELISSA became severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

64.     As a result of the injuries caused by her dehydration and the acute edema caused to her lungs by the aspiration pneumonia, ELISSA suffered a cardiac dysrhythmia and died.

65.     ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

66.     By reason of ELISSA's death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

67.     This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, KATHY L. NODINE, in such sums as will fairly and justly compensate the next-of-

kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for

such other and further relief, including equitable relief, as the Court deems just and appropriate,

including attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT II

### Survival Act Claim, Pursuant to 42 U.S.C. § 1983

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of

THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of

TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, KATHY

L. NODINE, states:

68.     Plaintiff adopts and realleges paragraphs 1-64 of this complaint as and for

paragraph 68 of this Count II as if said paragraphs were fully set forth herein.

69.     As a direct and proximate result of the reckless or deliberate indifference of

NODINE, as set forth above, ELISSA suffered substantial pain and discomfort prior to her death

and suffered severe emotional distress and her Estate has incurred medical bills and funeral

expenses.

70.     This Action and the damages sought by the Plaintiff are authorized by the Illinois

Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the

Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the

Defendant, KATHY L. NODINE, in such sums as will fairly and justly compensate the  Estate of

ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST

prior to her death, and for such other and further relief, including equitable relief, as the Court

14

deems just and appropriate, including attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT III

### Wrongful Death Act, Pursuant to Illinois Law

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, KATHY L. NODINE, states:

71.    Plaintiff adopts and realleges paragraphs 1-61 of this complaint as and for paragraph 71 of this Count III as if said paragraphs were fully set forth herein.

72.    NODINE'S actions and course of conduct, occurred in her role and within the scope of her employment as a jail officer at the Madison County Jail facility.

73.    In NODINE'S role as a jail officer, she owed a duty to pretrial detainees, including ELISSA, to refer detainees for medical care when necessary to avoid injury or death.

74.    At all times relevant to the issues raised in the Plaintiff's complaint, the Defendant, NODINE, knew that ELISSA suffered from an illness causing her to vomit, knew that the condition existed since ELISSA's incarceration on February 20, 2020, and knew that ELISSA's condition had continued to deteriorate, thereby placing ELISSA'S safety and life at risk.

75.    At all times relevant to the issues raised in this complaint, the Defendant, NODINE, knew that medical staff competent to examine ELISSA were present and available to care for ELISSA'S deteriorating medical condition and further knew that ELISSA could be

transferred for such additional medical care as might be necessary to treat ELISSA'S deteriorating condition.

76.     Despite her knowledge, as aforesaid, on February 20, 2020 and again on the morning of February 24, 2020, the Defendant, NODINE, willfully and wantonly and with a reckless disregard for ELISSA'S health and safety, repeatedly ignored ELISSA'S medical condition, failed to investigate her condition, and failed to call for a further medical evaluation of ELISSA'S condition.

77.     Through NODINE'S willful, wanton, and reckless conduct, ELISSA became severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

78.     As a result of the injuries caused by her dehydration and the acute edema to her lungs caused by the aspiration pneumonia, ELISSA suffered a cardiac dysrhythmia and died.

79.     ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

80.     By reason of ELISSA's death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

81.     This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, KATHY L. NODINE, in such sums as will fairly and justly compensate the next-of-

16

kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT IV

### Survival Act Claim, Pursuant to State Law

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, KATHY L. NODINE, states:

82.     Plaintiff adopts and realleges paragraphs 1-78 of this complaint as and for paragraph 82 of this Count IV as if said paragraphs were fully set forth herein.

83.     As a direct and proximate result of the willful and wanton conduct of NODINE, ELISSA suffered substantial pain and discomfort prior to her death and suffered severe emotional distress and her Estate has incurred medical bills and funeral expenses.

84.     This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, KATHY L. NODINE, in such sums as will fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## VIII.   COUNTS AGAINST JOHN D. LAKIN, AS SHERIFF OF MADISON COUNTY, ILLINOIS

### COUNT V

**Wrongful Death Pursuant to 42 U.S.C. § 1983**
**(Monell v. Dept. of Social Services of New York, 436 U.S. 658 (1978))**

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, states:

85.     Plaintiff adopts and realleges paragraphs 1-57 of this complaint as and for paragraph 85 of this Count V as if said paragraphs were fully set forth herein.

86.     As the Sheriff of Madison County, LAKIN has final policy making authority over all jail operations at the Madison County Jail facility.

87.     Pursuant to the Fourteenth Amendment of the United States Constitution, pretrial detainees, including ELISSA, have a due process right to receive medical care adequate to the severity of their injuries or illness.

88.     Pursuant to his obligations as the Madison County Sheriff, LAKIN owed a duty to detainees at the Madison County jail facility to enact such policies as may be necessary to protect the Fourteenth Amendment Rights of said detainees, including ELISSA.

89.     In his role as Sheriff, LAKIN had ample knowledge of the long history of significant issues with detainee health care at the Madison County Jail, knew that there were deficiencies in the policies governing detainee health care, and knew that there were deficiencies in the training of his jail officers and jail staff in addressing the health care needs of Madison County jail detainees.

18

90.     The Madison County Jail had no policy of any kind addressing officer directed calls for medical aid to detainees, the timing of medical calls for detainees, or the circumstance under which an officer would make a request for medical assistance to detainees.

91.     Upon information and belief, given the absence of policies addressing officer directed medical evaluations, LAKIN failed to provide training necessary for officers to recognize detainees in need of medical service, including those suffering from emergency medical conditions, like ELISSA.

92.     Given the history of significant issues with detainee health care, including numerous detainee deaths, LAKIN'S failure to enact policies and provide training for jail officers on matters related to detainee medical needs, constituted reckless indifference to the medical needs of detainees at the Madison County Jail, including ELISSA.

93.     Given the significant issues with detainee health care, through his failure to address policies and training and through his failure to properly address the conduct of his jail officers and their supervisors in their failure to provide necessary care for detainees, LAKIN recklessly and with deliberate indifference endorsed an unwritten policy of allowing his jail officers and staff to ignore the medical needs of detainees, including ELISSA.

94.     Through LAKIN'S reckless or deliberate indifference to the medical needs of detainees at the Madison County Jail, LAKIN'S reckless or deliberate indifference to the absence of policies, to provide adequate training of jail staff, and his implicit approval of an unwritten policy of depriving detainees of necessary medical care, LAKIN violated ELISSA'S Fourteenth Amendment due process rights.

95.     As a direct proximate result of the reckless or deliberate indifference of Defendant, LAKIN, during her incarceration, ELISSA became severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

96.     As a result of the injuries caused by her dehydration and the acute edema caused to her lungs by the aspiration pneumonia, ELISSA suffered a cardiac dysrhythmia and died.

97.     ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

98.     By reason of ELISSA'S death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

99.     This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, including attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT VI

### Survival Act Claim, Pursuant to 42 U.S.C. § 1983
### (Monell v. Dept. of Social Services of New York, 436 U.S. 658 (1978))

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of

THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of

TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN

D. LAKIN, as the Sheriff of Madison County, Illinois, states:

100.    Plaintiff adopts and realleges paragraphs 85-95 of this complaint as and for

paragraph 100 of this Count VI as if said paragraphs were fully set forth herein.

101.    As a direct and proximate result of the reckless or deliberate indifference of

LAKIN, ELISSA suffered substantial pain and discomfort prior to her death and suffered severe

emotional distress and her Estate has incurred medical bills and funeral expenses.

102.    This Action and the damages sought by the Plaintiff are authorized by the Illinois

Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the

Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the

Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will

fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and

damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and

further relief, including equitable relief, as the Court deems just and appropriate, including

attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT VII

### Wrongful Death Act Pursuant to Illinois Law
### (Vicarious Liability for NODINE Pursuant to 55 ILCS 5/3-6016)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN D. LAKIN, as Sheriff of Madison County, Illinois, states:

103.    Plaintiff adopts and realleges paragraphs 71-81 of Count III of this complaint as and for paragraph 103 of this Count VII as if said paragraphs were fully set forth herein.

104.    Pursuant to 55 ILCS 5/3-6016, LAKIN, as the Sheriff of Madison County, Illinois, is liable for any neglect or omission of his deputies, including NODINE.

105.    ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

106.    By reason of ELISSA's death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

107.    This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the

22

death of ELISSA A. LINDHORST, and for such other and further relief, including equitable

relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT VIII

**Survival Act Claim Pursuant to Illinois Law**
**(Vicarious Liability for NODINE Pursuant to 55 ILCS 5/3-6016)**

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of

THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of

TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN

D. LAKIN, as the Sheriff of Madison County, Illinois, states:

108.    Plaintiff adopts and realleges paragraphs 82-84 of Count IV of this complaint as

and for paragraph 108 of this Count VIII as if said paragraphs were fully set forth herein.

109.    As a direct and proximate result of the reckless or deliberate indifference of

NODINE, LAKIN'S deputy, ELISSA suffered substantial pain and discomfort prior to her death

and suffered severe emotional distress and her Estate incurred medical bills and funeral

expenses.

110.    This Action and the damages sought by the Plaintiff are authorized by the Illinois

Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the

Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the

Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will

fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and

damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and

further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT IX

### Wrongful Death Act Pursuant to Illinois Law
### (Vicarious Liability for Other Jail Officers Pursuant to 55 ILCS 5/3-6016)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN D. LAKIN, as Sheriff of Madison County, Illinois, states:

111.    Plaintiff repeats and realleges paragraphs 1-57 of this complaint as and for paragraph 111 of this Count IX as if said paragraphs were fully set forth herein.

112.    During the course of ELISSA'S incarceration at the Madison County Jail from February 20, 2020 through February 24, 2020, Jail Officers other than NODINE, medical staff, and others employed by the County (hereinafter collectively referred to as Jail Officers), working under color of State law and in the course, conduct and the scope of their employment with the Madison County Jail, provided supervision and/or observed ELISSA and her deteriorating health condition.

113.    The Jail Officers owed a duty to pretrial detainees, including ELISSA, to refer detainees for medical care and/or provide such medical care as necessary to avoid injury or death.

114.    At all times relevant to the issues raised in the Plaintiff's complaint, the Jail Officers knew that ELISSA suffered from an illness causing her to vomit, knew that the

condition existed since ELISSA'S incarceration on February 20, 2020, and knew that ELISSA'S condition had continued to deteriorate, thereby placing her safety and life at risk.

115.    At all times relevant to the issues raised in this complaint, the Jail Officers knew that medical staff competent to examine ELISSA were present and available to care for ELISSA'S deteriorating medical condition and further knew that ELISSA could be transferred for such additional medical care as might be necessary to treat the detainee's deteriorating condition.

116.    Despite their knowledge, as aforesaid, from February 20, 2020, and through the morning of February 24, 2020, the Jail Officers willfully and wantonly, and with a reckless disregard for ELISSA'S health and safety, repeatedly ignored ELISSA'S medical condition, failed to investigate her condition, and failed to call for further medical evaluation and treatment of ELISSA'S condition.

117.    Through the Jail Officers' willful, wanton, and reckless conduct, ELISSA became severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

118.    As a result of the injuries caused by her dehydration and the acute edema to her lungs caused by the aspiration pneumonia, ELISSA suffered a cardiac dysrhythmia and died.

119.    These Jail Officers employed by the Madison County Jail were the agents and/or employees of LAKIN, who at all times had supervisory responsibility for these individuals.

120.    Pursuant to 55 ILCS 5/3-6016, LAKIN, as the Sheriff of Madison County, Illinois, is liable for any neglect or omission of his deputies, including other Jail Officers.

121.     ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

122.    By reason of ELISSA'S death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

123.    This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01- 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT X

### Survival Act Claim, Pursuant to Illinois Law
### (Vicarious Liability for Other Jail Officers Pursuant to 55 ILCS 5/3-6016)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, states:

124.    Plaintiff repeats and realleges paragraphs 111-119 of Count XI of this complaint as and for paragraph 124 of this Count X as if said paragraphs were fully set forth herein.

26

125.    As a direct and proximate result of the reckless or deliberate indifference of LAKIN, as the Sheriff of Madison County, Illinois, as set forth above, ELISSA suffered substantial pain and discomfort prior to her death and suffered severe emotional distress and her Estate incurred medical bills and funeral expenses.

126.    This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, in such sums as will fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## XI.    COUNTS AGAINST MADISON COUNTY, ILLINOIS

### COUNT XI

**Wrongful Death Pursuant to 42 U.S.C. § 1983**
**(Monell v. Dept. of Social Services of New York, 436 U.S. 658 (1978))**

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, MADISON COUNTY, ILLINOIS, states:

127.    Plaintiff adopts and realleges paragraphs 1-57 of this complaint as and for paragraph 127 of this Count XI as if said paragraphs were fully set forth herein.

128.    The COUNTY has policy making authority over all jail operations at the Madison County Jail facility.

129.    Pursuant to the Fourteenth Amendment of the United States Constitution, pretrial detainees, including ELISSA, have a due process right to receive medical care adequate to the severity of their injuries or illness.

130.    The COUNTY owed a duty to detainees at the Madison County jail facility to direct such policies as may be necessary to protect the Fourteenth Amendment Rights of said detainees, including ELISSA.

131.    The COUNTY had ample knowledge of the long history of significant issues with detainee health care at the Madison County Jail, knew that there were deficiencies in the policies governing detainee health care, and knew that there were deficiencies in the training of the COUNTY'S Jail Officers in addressing the health care needs of Madison County jail detainees.

132.    The Madison County Jail had no policy of any kind addressing officer directed calls for medical aid to detainees, the timing of medical calls for detainees, or the circumstance under which an officer would make a request for medical assistance to detainees.

133.    Upon information and belief, given the absence of policies addressing officer directed medical evaluations, the COUNTY failed to provide training necessary for officers to recognize detainees in need of medical service, including those suffering from emergency medical conditions, like ELISSA.

134.    Given the history of significant issues with detainee health care, including numerous detainee deaths, the COUNTY'S failure to direct policies and training for Jail Officers on matters related to detainee medical needs, constituted reckless indifference to the medical needs of detainees at the Madison County Jail, including ELISSA.

135.    Given the significant issues with detainee health care, through its failure to direct policies and training and through its failure to properly address the conduct of Jail Officers and their supervisors in their failure to provide necessary care for detainees, the COUNTY recklessly and with deliberate indifference endorsed an unwritten policy of allowing LAKIN and Jail Officers and staff to ignore the medical needs of detainees, including ELISSA.

136.    The COUNTY'S reckless or deliberate indifference to the medical needs of detainees at the Madison County Jail, the COUNTY'S reckless and/or deliberate indifference to the absence of policy, the lack of adequate training of jail staff, and its implicit approval of an unwritten policy of depriving detainees of necessary medical care violated ELISSA'S Fourteenth Amendment due process rights.

137.    As a direct proximate result of the reckless or deliberant indifference of the COUNTY, during her incarceration, ELISSA because severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

138.    As a result of the injuries caused by her dehydration and the acute edema caused to her lungs by the aspiration pneumonia, ELISSA suffered a cardiac dysrhythmia and died.

139.    ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

140.    By reason of ELISSA'S death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

141.    This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A.

LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, MADISON COUNTY, ILLINOIS, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, including attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT XII

### Survival Act Claim, Pursuant to 42 U.S.C. § 1983
### (Monell v. Dept. of Social Services of New York, 436 U.S. 658 (1978))

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, MADISON COUNTY, ILLINOIS, states:

142.    Plaintiff adopts and realleges paragraphs 127-138 of Count XI of this complaint as and for paragraph 142 of this Count XII as if said paragraphs were fully set forth herein.

143.    As a direct and proximate result of the reckless or deliberate indifference of the COUNTY, ELISSA suffered substantial pain and discomfort prior to her death and suffered severe emotional distress and her Estate incurred medical bills and funeral expenses.

144.    This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

30

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, MADISON COUNTY, ILLINOIS, in such sums as will fairly and justly compensate the Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, including attorneys' fees pursuant to 42 U.S.C. § 1988, together with her cost of suit.

## COUNT XIII

### Wrongful Death Act Pursuant to Illinois Law
### (Vicarious Liability for County Employees)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of MADISON COUNTY, ILLINOIS, states:

145.    Plaintiff adopts and realleges paragraphs 1-57 of this complaint, the allegations raised against NODINE in paragraphs 71-81 of Count III, and the allegations involving other Jail Officers in paragraphs 111-123 of Count IX of this complaint as and for paragraph 145 of this Count XIII as if said paragraphs were fully set forth herein.

146.    At all times relevant to the issues raised herein, NODINE and the Jail Officers were the agents and/or employees of the COUNTY and acting within the scope of their employment.

147.    ELISSA left surviving her, as her next-of-kin, her mother, the Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

148.     By reason of ELISSA'S death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

149.     This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.  The Plaintiff, RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, MADISON COUNTY, ILLINOIS, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT XIV

### Survival Act Claim
### (Vicarious Liability for County Employees)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, MADISON COUNTY, ILLINOIS, states:

150.     Plaintiff adopts and realleges paragraphs 1-57 of this complaint, the allegations raised against NODINE in paragraphs 82-84 of Count IV, the allegations raised against the Jail

Officers in paragraphs 124-126 of Count X, and paragraph 146 of Count XIII of this complaint as and for paragraph 150 of this Count XIV, as if said paragraphs were fully set forth herein.

151.    This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, MADISON COUNTY, ILLINOIS, in such sums as will fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

## COUNT XV

### (Indemnity Claim Pursuant to 745 ILCS 10/9-102)

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by WILLIAM R. TAPELLA of TAPELLA & EBERSPACHER LLC, her attorneys, and complaining of the Defendant, MADISON COUNTY, ILLINOIS, states:

152.    Plaintiff repeats and realleges paragraphs 1-151 of this Complaint as and for paragraph 152 of this Count XV as if said paragraphs were fully set forth herein.

153.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, the COUNTY has an obligation to indemnify NODINE, LAKIN, and the Jail Officers for torts committed, while acting within the scope of their employment.

WHEREFORE, the Plaintiff, RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, MADISON COUNTY, ILLINOIS, in such sums as are sufficient to indemnify the other Defendants in this cause and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her costs of suit.

Dated this 11th day of February 2021.

Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased,

By: */s/  William R. Tapella*
William R. Tapella # 6220468
TAPELLA & EBERSPACHER LLC
6009 Park Drive
Charleston, IL 61920
T: (217) 639-7800
F: (217) 639-7810
tapella@tapellalaw.com

## JURY DEMAND

The Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, hereby demands Trial by Jury upon Plaintiffs' Complaint wherein Plaintiff seeks damages from the Defendants.

Dated this 11th day of February 2021.

RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased,

By: */s/ William R. Tapella*
William R. Tapella ARDC 6220468