**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION, EAST ST. LOUIS, ILLINOIS**

| | | |
|---|---|---|
| RANA SCHMIDT, as the Independent | ) | |
| Administrator of THE ESTATE OF ELISSA A. | ) | |
| LINDHORST, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-0152-SPM |
| | ) | |
| MADISON COUNTY, ILLINOIS, | ) | |
| JOHN D. LAKIN, as the Sheriff of Madison County, | ) | |
| KATHY L. NODINE, DEPUTY HURST, | ) | |
| DEPUTY PAULDA, SGT. SARHAGE, | ) | |
| ALISIA RUSHING, DEPUTY GOODWIN, | ) | |
| DEPUTY CALDWELL, DEPUTY DECKER, | ) | |
| LT. FOSTER, SGT. RICHERT, DEPUTY WILSON | ) | |
| DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, | ) | |
| REBECCA McNAUGHTON, Special Representative | ) | |
| Of The Estate of SGT. McNAUGHTON | ) | |
| DEPUTY WALLENDORFF, DEPUTY BURDEN, | ) | |
| DEPUTY WHITECOTTON, AND DEPUTY HARING, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE

ESTATE OF ELISSA A. LINDHORST, deceased, by MEYER & KISS, LLC, her attorneys, and

complaining of the Defendants states the following:

**Introduction**

1.     On February 24, 2020, Elissa Lindhorst (hereafter Elissa) died in a cell at the Madison

County Jail. She did not deserve to die, and her death was preventable. From February

20, 2020, until her death on February 24, 2020, numerous employees of the Madison

County Sheriff's Department observed Elissa's health decline yet failed to take any

1

steps to get her the much needed and medical attention she needed. Elissa was only 28 years old.

2.  Prior to her death, fellow detainees in the Madison County Jail heard Elissa beg for help and state that she felt like she was dying. These fellow detainees did all they could to help Elissa. They received no assistance from the Defendants, except for a mop and bucket to clean up Elissa's vomit.

3.  No one responded to Elissa's pleas for help. The callous inattention displayed by the medical staff and correctional officers left Elissa without crucial medical treatment that resulted in her death.

4.  Elissa was in obvious need of emergency medical care resulting from opioid dependency and withdrawal. The Defendants were aware that Elissa was going through withdrawal, yet they failed to take any action.

5.  Defendants Madison County Sheriff JOHN D. LAKIN failed to implement any meaningful training or provide continuing education to their employees that focused on the signs, symptoms, and consequences of drug intoxication and/or withdrawal of detainees being held in the Jail and the need to render prompt and adequate medical care.

6.  Notably, In the hours leading up to Elissa's death, surveillance video shows fellow detainees pulling Elissa out of her cell and attempting to provide medical care as they yell repeatedly for help.

**Jurisdiction and Venue**

7.  This Court has jurisdiction over this matter under the following:

    a.      28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws,

2

and/or treaties of the United States;

b.    28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

c.    28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

8.    Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

9.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

**Parties**

11.    RANA SCHMIDT is a resident of Glen Carbon, Madison County, Illinois. She is the duly appointed Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased.

Ms. SCHMIDT is the mother of the decedent and brings this action on behalf on the

Decedent's next of kin.

12.     At all times relevant to the issues raised in this Complaint, ELISSA A. LINDHORST,

deceased, resided in Glen Carbon, Madison County, Illinois. Elissa, born on April 30,

1991, died while incarcerated as a pretrial detainee at the Madison County Jail on

February 24, 2020.

13.     From February 20, 2020, to February 24, 2020, Elissa, was a pre-trial detainee confined

in Madison County Jail in Edwardsville, Illinois, a correctional facility maintained by

Defendant Madison County Sheriff JOHN D. LAKIN ("Defendant LAKIN").

14.     At all relevant times, Defendant LAKIN was the duly elected sheriff of Madison County

and chief administrator of the Madison County Jail.

15.     At all relevant times, he was acting under color of law and in the course and scope of

his employment as the agent, servant, and an official policy-maker for Defendant

MADISON COUNTY on issues relating to care of prisoners in Madison County Jail and

the policies, procedures, practices, and customs, as well as the acts and omissions,

challenged by this suit, and as the County's chief law enforcement officer. He is sued in

his official capacity.

16.     Defendant LAKIN was the commanding officer of all Madison County Sheriff's deputies,

correctional officers, and jail employees, and he was responsible for their training,

supervision, and conduct.

17.     Defendant MADISON COUNTY is joined in this action pursuant to *Carver v. Sheriff of

LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

18.   At time material to this complaint, Defendant ALISIA RUSHING ("Defendant RUSHING") was a nurse at the Madison County Jail, employed by Madison County and Defendant LAKIN, who was responsible for the well-being, medical care, and safety of detainees, including Elissa.

19.   At times material to this complaint, Defendants KATHY L. NODINE, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE,  DEPUTY GOODWIN, DEPUTY CALDWELL, DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, DEPUTY WALLENDORFF, DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING ("Defendant Correctional Officers") were correctional officers at the Madison County Jail, employed by Madison County and Defendant LAKIN, who were responsible for the well-being and safety of detainees, including Elissa.

20.   REBECCA McNAUGHTON was named the Administrator of the Estate of Sgt. Donald McNAUGHTON in Madison County under case number 21-W-395 and is named in this case as a Defendant as the Special Representative for Sgt. McNaughton.

**Bases For Claim**

21.   The Plaintiff brings her claims on behalf of the decedent's estate and the decedent's next of kin pursuant to the Illinois Survival Act, 755 ILCS 5/27-6, and the Illinois Wrongful Death Act, 740 ILCS 180/0.01-180/2.2, respectively.

22.   The Plaintiff brings her federal claims against the Defendants pursuant to 42 U.S.C. § 1983 for violations of Elissa's rights under the Fourteenth Amendment to the United

States Constitution, which prohibits "deliberate indifference to the serious medical needs of pretrial detainees."

23.    The Plaintiff brings her state law claims pursuant to Illinois tort law against the Defendants for willfully and wantonly denying Elissa medical care while detained at the Madison County Jail. LAKIN is further named as a Defendant pursuant to 55 ILCS 5/3-6016, which provides that "the sheriff shall be liable for any neglect or omission of the deputies of his office, when occasioned by a deputy . . . in the same manner for his or her own personal neglect or omission" and as the principal for the Defendant Correctional Officers and Defendant RUSHING and the other unknown Madison County employees.

**FACTS COMMON TO ALL CLAIMS**

**A.    ELLISA'S INCARCERATION AND DEATH**

24.    Prior to February 20, 2020, Elissa had long struggled with addiction issues.

25.    On February 20, 2020, Elissa appeared in Granite City, Illinois, for an appearance in court.

26.    During her appearance, the presiding judge recognized Elissa as having an outstanding warrant and notified Madison County Sheriff deputies, who were working at the Granite City Courthouse that day.

27.    The Deputies, Deputy Schneidewind and Deputy Saffell, responded to the Judge's notification. Deputy Saffell confirmed the warrant by phone, determining that the warrant sought Elissa's arrest for possession of a controlled substance.

28.    After confirming the warrant, Deputy Saffell took Elissa into custody, "without

incident," placed her into his patrol vehicle, and transported her to the Madison

County Jail.

29.    Elissa arrived at the jail at about 4:38 PM on Thursday, February 20, 2020. Once at the

jail, Deputy Saffell remained present until Elissa completed a body scan as part of the

intake process and then turned Elissa over to corrections, again, "without incident."

30.    During the booking process, consistent with Department policy, Deputy Tharp checked

Elissa's  Booking History Report. That report revealed that Elissa had previously been

booked in 2019, once for possession of a controlled substance and, a second time, for

possession of methamphetamine.

31.    Consistent with Department Policy, Deputy Tharp, conducted a search of Elissa's

person and belongings, including the body scan witnessed by Deputy Saffell and a strip

search. Neither the search by Deputy Saffell at the time of the arrest nor the search

during the booking process revealed contraband of any type, including drugs, alcohol,

or other illicit substances, in Elissa's possession.

32.    Shortly after booking, Elissa became ill, began vomiting, and requested aid from the

Defendant NODINE.

33.    Defendant NODINE observed that Elissa had become ill and was vomiting. Elissa told

Defendant NODINE that she was withdrawing from an opioid.

34.    As a result of Elissa's illness, Defendant NODINE, claims to have completed a sick slip

form seeking medical assistance for Elissa. However, despite Department policy that

requires such slips to be maintained in the detainee's file, no sick slip, dated February 20, 2020, is in Elissa's file.

35.    According to Defendant NODINE, she submitted the sick slip on February 20, 2020, when Elissa reported that she was withdrawing from an opioid. NODINE also reported that she submitted the sick slip to the jail infirmary, which is required by Department policy.

36.    Pursuant to Department Policy, when a sick slip is submitted, the medical staff must decide if a detainee is to be seen and whether the detainee will be evaluated by a nurse or a doctor. Where an exam is approved, that exam is to occur after the distribution of medicine is completed the following morning.

37.    No medical staff member evaluated Elissa in response to the sick slip that NODINE claims to have submitted on February 20, 2020, and there is nothing in Elissa's file to suggest any consideration by the medical staff of Elissa's condition.

38.    In the early morning hours of February 21, 2020, Defendant HURST was informed by Defendant NODINE that Elissa was detoxing.

39.    While passing out breakfast, Defendant HURST observed that Elissa had vomited on the floor.

40.    During lunch on February 21, 2020, Defendant HURST once again witnessed Elissa vomit. By that point, Defendant HURST was aware that Elissa had not eaten any breakfast or lunch.

41.    Elissa was also unable to eat the dinner that was passed out by Defendant HURST.

42.   Defendant HURST never summoned or requested any medical attention for Elissa during her shift even after observing Elissa vomiting and becoming aware that she was withdrawing.

43.   At the end of Defendant HURST's shift, Defendant HURST informed Defendant PAULDA that Elissa had been sick the entire day and did not eat anything.

44.   Defendant PAULDA observed that Elissa was extremely sick yet failed to request any medical attention for Elissa.

45.   Through February 21, February 22, and February 23, Defendants NODINE, HURST, PAULDA, SGT. SARHAGE,  GOODWIN, CALDWELL, DECKER, LT. FOSTER, SGT. RICHERT, WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, WALLENDORFF, BURDEN, WHITECOTTON, and DEPUTY HARING, never sought out or provided any medical evaluation or care of any type to Elissa. All of these Defendants were aware that Elissa had not been eating, was vomiting and was withdrawing from an opioid.

46.   After the Defendants NODINE, HURST and PAULDA noted Elissa was vomiting on February 20, 2020, and into the early hours of February 21, 2020, the Defendant Correctional Officers observed Elissa's condition continue to deteriorate. She continued to vomit, could not eat, and could not drink liquids throughout the remainder of her incarceration at the MADISON COUNTY JAIL, which ended with her death on February 24, 2020.

47.  After Elissa requested aid from Defendant NODINE, on February 20, 2020, Elissa and her cell mates, Misty and Michelle, made repeated requests for medical assistance to multiple Defendant Correctional Officers.

48.  The Defendant Correctional Officers that came into contact with Elissa from February 20, 2020, through February 24, 2020, acted willfully and wantonly and with a deliberate indifference to Elissa's serious and deteriorating medical condition, ignored the repeated pleas for help from Elissa, Misty, and Michelle, failed to assess Elissa, and failed to provide necessary medical care, which was at all times available to detainees at the Jail.

49.  On February 22, 2020, Defendants WALLENDORFF, LT. FOSTER, LT. COURT, WHITECOTTON, HARING, SGT. BARDELMEIER, and SCHREIBER all completed rounds in the female side of the jail and observed Elissa's deteriorating condition and observed that she had been vomiting. Defendants WALLENDORFF, LT. FOSTER, LT. COURT, WHITECOTTON, HARING, SGT. BARDEIMEIER, and SCHREIBER all knew that Elissa was withdrawing from opioids, yet none of these individual defendants sought medical attention for Elissa.

50.  On February 23, 2020, Defendants GOODWIN, CALDWELL, SGT. BARDELMEIER, DECKER, PAULDA, SCHREIBER, SGT. RICHERT, HARING, BURDEN, WILSON, LT. COURT, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, WHITECOTTON, LT. FOSTER all completed rounds in the female side of the jail and observed Elissa's deteriorating condition and observed that she had been vomiting and still had not been seen by any medical providers. Defendants GOODWIN, CALDWELL,

SGT. BARDELMEIER, DECKER, PAULDA, SCHREIBER, SGT. RICHERT, HARING, BURDEN, WILSON, LT. COURT, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, WHITECOTTON, and LT. FOSTER all knew that Elissa's deteriorating condition was due to her withdrawing from opioids, yet none of these individual defendants sought medical attention for Elissa.

51. Specifically on February 23, 2020, Defendants LT. COURT, SGT. BARDELMEIER, and WILSON spoke with Elissa, who told them she was going through withdrawal. Instead of getting Elissa medical attention, they provided the cell block with cleaning supplies and a Biohazard bag to clean the vomit out of Elissa's cell.

52. Defendant SGT. BARDELMEIER falsely stated in a report that he asked Elissa if she was doing "okay" and that she responded she was.

53. On February 23, 2020, the other detainees in the Jail with Elissa were so concerned with her condition that they completed a sick call slip on her behalf, since Elissa was too sick to complete one herself. Upon information and belief, Defendant PAULDA picked-up the sick call slip completed by the other detainees and threw it in the garbage.

54. On the morning of February 24, 2020, Sergeant Hare of the Madison County Sheriff's Department found a handwritten note by Misty and Michelle pleading for assistance for Elissa. Sergeant Hare found the note "in a trash container at the front of F4 which is utilized by guards." A copy of the note written by Misty and Michelle is attached as Exhibit A to this complaint.

55.    On February 24, 2020, at approximately 4:55 a.m., Defendant PAULDA spoke with Defendant SGT. SARHAGE and informed Defendant SGT. SARHAGE that Elissa was still sick from withdrawing. Defendants SGT. SARHAGE and PAULDA decided to go speak with Defendant RUSHING regarding Plaintiff's condition. Upon information and belief, this was the first time that medical staff was contacted regarding Elissa's condition.

56.    At approximately 5:00 a.m., Defendants PAULDA and SGT. SARHAGE went to the Jail infirmary and spoke with Defendant RUSHING. Defendants PAULDA and SGT. SARHAGE told Defendant RUSHING about Elissa's withdrawal symptoms. Defendant RUSHING told Defendants PAULDA and SGT. SARHAGE to fill out a sick call slip for Elissa.

57.    Even after being told of Elissa's condition and how she had been vomiting over the last three days, Defendant RUSHING refused to see Elissa.

58.    On the morning of February 24, 2020, Defendant NODINE began her duty rounds at 6:00 AM. Shortly thereafter, she observed Elissa lying on the floor of her cell near the toilet. Willfully and wantonly and with reckless and deliberate indifference to Elissa's condition, NODINE made no effort to check on Elissa, assess her condition, or call for medical staff assistance.

59.    When NODINE made her next duty round thirty minutes later, at or about 6:30 AM, she found Elissa still lying in the same position. Willfully and wantonly and with reckless and deliberate indifference to Elissa's condition, NODINE made no effort to check on ELISSA, assess her condition, or call for medical staff assistance.

60.    Thirty minutes later, at or about 7:00 AM, NODINE again found Elissa lying by the toilet, this time slightly rolled to one side. She noted Elissa raising her head and having vomit

on her. Willfully and wantonly and with reckless and deliberate indifference to Elissa's condition, NODINE made no effort to check on Elissa, assess her condition, or call for medical staff assistance.

61.    After completing her 7:00 AM duty round and without having checked Elissa's condition or called for medical staff assistance, NODINE began to distribute breakfast to the other inmates. Misty expressed her concern to NODINE about Elissa's condition and asked if she could give Elissa her breakfast. Willfully and wantonly and with reckless and deliberate indifference to Elissa's condition, NODINE watched Misty take Elissa her breakfast but did nothing herself to check on Elissa or call for medical staff assistance.

62.    Some thirty minutes later, a little after 7:30 AM, NODINE began her duty rounds, again. This time, Nurse Bassett also began passing out morning medications to inmates in the same area of the jail where Elissa had been lying on the floor by her toilet for over an hour and a half.

63.    While NODINE made rounds and Basset handed out meds, Misty and Michelle began yelling that Elissa had stopped breathing. The two cell mates had carried Elissa from her cell into the main detainee walkway, by the time that NODINE and Basset arrived.

64.    After ignoring Elissa's condition for more than three days and ignoring her grave condition on the morning of February 24, 2020, for over an hour and a half, the Defendant Correctional Officers employed by the COUNTY and LAKIN finally began to give attention to Elissa's deteriorating medical condition; NODINE by assisting Nurse Basset with cardiopulmonary resuscitation.

65.     Unfortunately for Elissa, due to the deliberate indifference of the Defendant Correctional Officers and Defendant RUSHING, during the time between Elissa's admission to the Madison County Jail and the morning of February 24, 2020, Elissa's condition had progressed to the point of severe dehydration, and she had aspirated her vomit, causing her lungs to become congested and inflamed.

66.     By the time that the Defendant Correctional Officers and Defendant RUSHING provided care to Elissa, she could not recover from those injuries. At 8:30 AM on February 24, 2020, Dr. Grant Gerdelman, M.D. pronounced her dead.

**B.      THE SETTING FOR ELISSA'S INCARCERATION**

67.     In 2019, the National Institute for Drug Abuse reported 70,630 deaths from drug abuse, including "those caused by synthetic opioids other than methadone (primarily fentanyl)," which accounted for over 36,000 of those deaths. According to the Centers for Disease Control, "synthetic opioids other than methadone are the main driver of overdose deaths."

68.     In Illinois' fiscal year (SFY) 2018, methamphetamine-related offenses led to 1,017 Illinois Department of Corrections admissions. Methamphetamine-related admissions accounted for 4 percent of all admissions and almost 18 percent of all drug admissions that year.[48] From SFY12 to SFY18, Illinois prisons experienced a 67 percent increase in the number of individuals admitted for a methamphetamine offense, rising from 967 individuals in 2012 to over 1,600 in 2018.[50]

69.     The Centers for Disease Control reports that, in Illinois alone, during 2018, over 2,700 people died as a result of drug overdose.

70.     The risk attendant to drug overdoses and withdrawal from drugs were and should have been well known to the Defendants, LAKIN and MADISON COUNTY, and these Defendants had a duty under the U.S. Constitution to enact policies and procedures to protect pretrial detainees, including Elissa, from said risk including the development of policies and training to guide their employees, including the Defendants, in the care and supervision of detainees suffering from emergency medical conditions.

C.      **THE POLICIES AND REGULATIONS GOVERNING ELISSA'S INCARCERATION**

71.     At all times relevant to the issues raised in this Complaint, the Madison County Sheriff's Office had in full force and effect its Policy number 1100, Co-Payment for Prisoner Medical Services. Under that Policy, the Sheriff's office recognized its obligation to "provide services to all detainees pursuant to and consistent with the Illinois Department of Correction-County Jail Standards."

72.     At all times relevant to the issues raised in this Complaint, the Illinois Department of Correction maintained its County Jail Standards, Ill. Admin. Code 20 § 701.5-701.280, governing the responsibilities of County jails throughout Illinois, including Madison County.

73.     The Illinois Department of Correction's County Jail Standards, §701.40(i)(3), requires Illinois jails to refer detainees for medical evaluation "[w]hen a detainee shows signs of or reports unusual physical or mental distress." The Defendants LAKIN and MADISON COUNTY had no policy in place requiring such medical evaluation for detainees, including Elissa.

74.    The Illinois Department of Corrections County Jail standards, §701.90(b)(1), requires

that a physician be available "to attend the medical and mental health needs of

detainees." Upon information and belief, the Defendants LAKIN and MADISON COUNTY

had no policy providing for a physician to be available for detainees, including Elissa.

75.    The Illinois Department of Corrections County Jail standards, §701.90(d)(1), requires

the jail to provide a daily sick call and, under §701.90(d)(3), requires detainees with

emergency conditions to "receive attention as quickly as possible, regardless of the sick

call schedules." The Defendants LAKIN and MADISON COUNTY had no policy in place

that permitted detainees, including Elissa, to receive prompt, immediate care of

emergency conditions.

76.    Under Madison County Sheriff's Office Policy number 1100.5(a), all deputies had an

obligation to "dispense sick slips upon request and with each Medication Pass …[and]

see that the slips are returned to the infirmary …." The Defendants LAKIN and

MADSION COUNTY failed to train their employees, including the Defendant

Correctional Officers, on the use of sick slips or on the obligation to avoid this

prerequisite to medical care in emergency situations, like that experienced by Elissa.

77.    Under that same policy, 1100.5, Subsection (b), medical staff are to determine "when

and if the prisoner should be seen on either the next Nurse Call or Doctor Call."  The

policy further requires that all sick slips be maintained in the detainee's medical file.

The Defendants LAKIN and MADISON COUNTY failed to train the employees, including

the Defendant Correctional Officers, on the need to seek immediate medical attention

for emergency medical conditions like that suffered by Elissa and to recognize those

conditions requiring immediate medical assistance and the need to dispense with sick slip requirements.

78.    Defendants LAKIN and MADISON COUNTY never developed any policy that defined for their employees, including the Defendant Correctional Officers, when detainees should receive medical attention, other than upon the completion of a sick slip; that defined or provided guidance on when a medical condition should be determined to be an emergency; or that defined or offered guidance to officers concerning the signs or symptoms of drug overdose, withdrawal, dehydration, or other medical conditions that pose a threat of significant harm or to the life of detainees.

79.    Defendants LAKIN and MADISON COUNTY  failed to train jail employees, including the Defendant Correctional Officers and Defendant RUSHING, to recognize serious medical conditions, including drug overdoses and withdrawal, to understand the significant risk of harm posed by drug overdoses and withdrawal, and failed to provide necessary training and guidance to jail employees in determining the need for necessary medical assistance.

**D.    MADISON COUNTY'S HISTORY OF ISSUES WITH DETAINEE SAFETY**

80.    Madison County has a significant history of issues with detainee safety, including thirty-six suicide attempts and three successful suicides over the five years from 2005 through 2010. *See Pittman ex rel. Hamilton v. County of Madison, Ill.* 746 F.3d 766, 773 (2014).

81.    There have been many other incidents involving injuries to detainees since 2010. In 2017, an inmate smuggled narcotics into the Madison County jail, where three

detainees, who consumed the drugs, required medical attention, including hospitalization, for their intoxication. www.riverbend.com/articels/details/three-femaile-madison-county-jail-inmates-treated-for-suspected-opioidbased-overdoses-20145.cfm.

82.  In 2016, an inmate beat to death another inmate in Madison County Jail. The injured victim of the beating did not receive assistance from jail officers for almost two hours after the beating. www.thetelegraph.com/new/article/Caught-on-camera-Inmate-beaten-to-death-12710270.php.

**Causes of Action:**

**COUNT I**
**Claims under 42 U.S.C. 1983: LAKIN**

83.  Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

84.  Plaintiff is entitled to relief against Defendant LAKIN under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

85.  At all times material, Plaintiff's decedent, Elissa, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the Madison County Jail, and to have her mental health issues timely and properly assessed and treated.

86.  Defendant LAKIN deliberately disregarded the immediate and serious threat to the mental and medical health and well-being of persons in the Madison County Jail and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and

18

death.

87.     Defendant LAKIN was well aware that there were detainees confined in the Madison County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendant LAKIN intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

88.     Defendant LAKIN knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, that the threat of this was imminent and immediate.

89.     Defendant LAKIN deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that:

a.     with full knowledge of prior in custody deaths, and that failing to provide adequate medical care to detainees with serious medical issues could die were reasonably foreseeable, Defendant LAKIN simply failed to provide needed care and attention;

b.     with full knowledge of detainees with histories of serious medical issues, Defendant LAKIN's actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as

to amount to no medical and mental health care at all.

90.    In light of the aforementioned, Elissa suffered from both an objectively and subjectively

substantial risk of serious harm while under the care and custody of Defendant LAKIN.

Defendant LAKIN reacted to this risk in an objectively and subjectively unreasonable

manner.

91.    It is more likely than not that the failures of Defendant LAKIN as alleged above were

the cause of Elissa's death.

92.    As a result of Defendant LAKIN's disregard of and indifference to Plaintiff's decedent's

constitutionally protected right to be provided with proper care, to be safe and free

from harm, Plaintiff's decedent, Elissa's medical needs were ignored.

93.    As a direct and proximate result of Defendant LAKIN deliberate indifference to Elissa's

serious health needs, Elissa died from complications of serious medical issues on

February 24, 2020.

WHEREFORE, Plaintiff prays for judgment as noted below.

**COUNT II**
**Claims under 42 U.S.C. 1983:**
**KATHY L. NODINE, ALISIA RUSHING, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE, DEPUTY GOODWIN, DEPUTY CALDWELL, DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, DEPUTY WALLENDORFF, DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING**

94.    Plaintiff re-alleges the above allegations as if fully set forth herein.

95.    Plaintiff is entitled to relief against Defendant Correctional Officers under 42 U.S.C. §

1983, based on violation of the Fourteenth Amendment to the U.S. Constitution.

96.    At all times material, Elissa had a constitutionally protected right under the Fourteenth

Amendment to the U.S. Constitution to receive necessary care while in the Madison County Jail, and to have her serious medical needs timely and properly assessed and treated.

97.    Defendant Correctional Officers and Defendant RUSHING deliberately disregarded the immediate and serious threat to the well-being of persons in the Madison County Jail in need of medical treatment and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to immediate and structured medical observation, assessment, and treatment necessary to treat serious medical needs and prevent suffering and death.

98.    Defendant Correctional Officers and Defendant RUSHING were aware of the fact that there were detainees at the Jail who suffered from severe medical needs and were at risk of injury and/or death. Despite this knowledge, Defendant Correctional Officers and Defendant RUSHING intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

99.    Defendant Correctional Officers and Defendant RUSHING knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could be seriously injured and/or die, that such injuries and/or deaths were reasonably foreseeable, and that the risk of injuries and/or death was imminent and immediate.

100.    Defendant Correctional Officers and Defendant RUSHING deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and

exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent health care to treat their serious medical issues.

101.    In light of the aforementioned, Elissa suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Correctional Officers and Defendant RUSHING.

102.    Defendant Correctional Officers and Defendant RUSHING responded to this risk in an objectively and subjectively unreasonable manner.

103.    As a result of Defendant Correctional Officers' disregard of and indifference to Elissa's constitutionally protected right to be provided with proper care, Plaintiff's medical needs were ignored and it is more likely than not that the failures of Defendant Correctional Officers and Defendant RUSHING as alleged above were the proximate cause of Elissa's death.

104.    As a direct and proximate result of Defendant Correctional Officers' deliberate indifference to Elissa's serious health needs, Elissa dies on February 24, 2020.

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

**COUNT III**
**Claims under 42 U.S.C. 1983:**
***Monell* Claim: Defendant LAKIN**

105.    Plaintiff re-alleges the above allegations as if fully set forth herein.

106.    The violations of Elissa's constitutional rights under the Fourteenth Amendment to the United States Constitution, her damages and the conduct of the individual Defendants, were directly and proximately caused by the actions and/or inactions of Defendant

LAKIN, in his official capacity as the final policy-maker as Sheriff of Madison County,

who have, with deliberate indifference:

a.    failed to establish and/or implement policies, practices and procedures to

ensure that detainees at the Madison County Jail receive prompt and appropriate

medical care for serious medical needs, including specifically providing monitoring and

care by medically-trained personnel for individuals experiencing drug withdrawal or

intoxication/overdose;

b.    failed to adequately assess and provide adequate care and treatment for

detainees exhibiting signs of distress;

c.    failed to adequately monitor the deteriorating mental and medical health

conditions of detainees;

d.    failed to ensure through training, supervision and discipline that correctional,

supervisory and medical staff at or assigned to the Madison County Jail, in necessary

circumstances, make a prompt referral for health care services outside the Jail;

e.    failed to ensure through training, supervision and discipline that correctional

and medical staff adequately communicate and document inmates' deteriorating

mental and medical health conditions;

f.    failed to ensure through training, supervision and discipline that correctional

and medical staff properly respond to inmates' deteriorating mental and medical

health conditions;

g.    possessed knowledge of deficiencies in the policies, practices, customs and

procedures concerning detainees, and approved and/or deliberately ignored these

deficiencies.

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

### COUNT IV
### Wrongful Death Act, Pursuant to Illinois Law

NOW COMES the Plaintiff, RANA SCHMIDT, as the Independent Administrator of THE

ESTATE OF ELISSA A. LINDHORST, deceased, by MEYER & KISS, LLC., her attorneys, and

complaining of the Defendant NODINE, states:

107.    Plaintiff re-alleges the above allegations as if fully set forth herein.

108.    NODINE'S actions and course of conduct, occurred in her role and within the scope of

her employment as a jail officer at the Madison County Jail facility.

109.    In NODINE'S role as a jail officer, she owed a duty to pretrial detainees, including Elissa,

to refer detainees for medical care when necessary to avoid injury or death.

110.    At all times relevant to the issues raised in the Plaintiff's complaint, Defendant NODINE

knew that Elissa suffered from an illness causing her to vomit, knew that the condition

existed since Elissa's  incarceration on February 20, 2020, and knew that Elissa's

condition had continued to deteriorate, thereby placing Elissa's safety and life at risk.

111.    At all times relevant to the issues raised in this complaint, Defendant NODINE knew

that medical staff competent to examine Elissa were present and available to care for

Elissa's deteriorating medical condition and further knew that Elissa could be

transferred for such additional medical care as might be necessary to treat Elissa's

deteriorating condition.

112.    Despite her knowledge, as aforesaid, on February 20, 2020, and again on the morning

of February 24, 2020, Defendant NODINE willfully and wantonly and with a reckless

24

disregard for Elissa's health and safety, repeatedly ignored Elissa's medical condition, failed to investigate her condition, and failed to call for a further medical evaluation of Elissa's condition.

113.   Through NODINE'S willful, wanton, and reckless conduct, Elissa became severely dehydrated and aspirated her own vomit, thereby causing acute pneumonia.

114.   As a result of the injuries caused by her dehydration and the acute edema to her lungs caused by the aspiration pneumonia, Elissa suffered a cardiac dysrhythmia and died.

115.   Elissa left surviving her, as her next-of-kin, her mother, Plaintiff, RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

116.   By reason of Elissa's death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

117.   This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2. Plaintiff RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, Plaintiff RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant, KATHY L. NODINE, in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**COUNT V**
**Survival Act Claim, Pursuant to State Law**

NOW COMES Plaintiff RANA SCHMIDT, as the Independent Administrator of The Estate of ELISSA A. LINDHORST, deceased, by MEYER & KISS, LLC., her attorneys, and complaining of the Defendant, KATHY L. NODINE, states:

118.    Plaintiff re-alleges the above allegations as if fully set forth herein.

119.    As a direct and proximate result of the willful and wanton conduct of NODINE, Elissa suffered substantial pain and discomfort prior to her death and suffered severe emotional distress and her Estate has incurred medical bills and funeral expenses.

120.    This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, Plaintiff RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendant KATHY L. NODINE, in such sums as will fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**COUNT VI**
**Wrongful Death Act Pursuant to Illinois Law (MADISON COUNTY & JOHN D. LAKIN)**

NOW COMES Plaintiff RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by MEYER & KISS, LLC., her attorneys, and complaining of Defendants JOHN D. LAKIN, as Sheriff of Madison County and MADISON COUNTY Illinois, states:

26

121. Plaintiff re-alleges the above allegations as if fully set forth herein.

122. At all times relevant to this SECOND AMENDED COMPLAINT, LAKIN, as the Sheriff of Madison County, Illinois, employed KATHY L. NODINE, ALISIA RUSHING, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE, DEPUTY GOODWIN, DEPUTY CALDWELL, DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, DEPUTY WALLENDORFF,DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING (previous John Doe Defendants), and is liable for the conduct of his employees.

123. At all relevant times, the Defendants, MADISON COUNTY and JOHN D. LAKIN, as Sheriff of Madison County, by and through the ats of tis agents and/or employees, each had a duty to exercise case in their interaction with the Decedent, ELISSA A. LINDHORST, and a duty to refrain from willful and wanton conduct in their interaction with Decedent.

124. At the time and place alleged, Defendants, MADISON COUNTY and JOHN D. LAKIN, as Sheriff of Madison County, by and through the acts of its agents and/or employees, breached their duty to the Decedent, ELISSA A. LINDHORST, by acting in an intentional, willful and wanton manner, negligent and/or in utter disregard for the Decedent's safety in one or more of the following respects:

   a. Failed to provide medical care to the Decedent;

   b. Failed to summon medical care for the Decedent;

   c. Failed to take reasonable action(s) to provide medical are to the Decedent;

   d. Failed to take reasonable action(s) to summon medical care for the Decedent;

    e.  Ignored the Decedent's need for medical care;

    f.  Unreasonably delayed providing medical care to the Decedent;

    g.  Unreasonably delayed summoning medical care to the Decedent;

    h.  Unreasonably delayed taking reasonable action(s) to provide medical care to the Decedent;

    i.  Unreasonably delayed taking reasonable action(s) to summon medical care for the Decedent;

    j.  Failed to summon paramedic and/or other medical professionals in a timely fashion to administer medical treatment to the Decedent; and

    k.  Were otherwise willful and wanton and/or negligent.

125.  As a proximate result of one or more of the aforesaid intentional and/or willful and want and/or negligent acts and/or omissions, the Decedent, ELISSA A. LINDHORST, sustained injuries which resulted in her death.

126.  ELISSA left surviving her, as her next-of-kin, her mother, Plaintiff RANA SCHMIDT, and her sisters, Kaci Lindhorst Sokoloff, Sara Lindhorst Cox, and Jody O'Mara.

127.  By reason of ELISSA's death, her next-of-kin have suffered grief and been deprived of the society, love, affection, and companionship of ELISSA A. LINDHORST.

128.  This Action and the damages sought by the Plaintiff are authorized by and brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2. Plaintiff RANA SCHMIDT, as the Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, brings this action for the use and the benefit of the next-of-kin for ELISSA A. LINDHORST.

WHEREFORE, Plaintiff RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendants, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, and MADISON COUNTY in such sums as will fairly and justly compensate the next-of-kin for the substantial loss sustained as a result of the death of ELISSA A. LINDHORST, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**COUNT VII**
**Survival Act Claim Pursuant to Illinois Law (MADISON COUNTY & JOHN D. LAKIN)**

NOW COMES Plaintiff RANA SCHMIDT, as the Independent Administrator of THE ESTATE OF ELISSA A. LINDHORST, deceased, by MEYER & KISS, LLC, her attorneys, and complaining of the Defendants, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, and MADISON COUNTY, states:

129.    Plaintiff re-alleges the above allegations as if fully set forth herein.

130.    As a direct and proximate result of the reckless or deliberate indifference of KATHY L. NODINE, ALISIA RUSHING, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE,  DEPUTY GOODWIN, DEPUTY CALDWELL, DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, DEPUTY WALLENDORFF,DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING, LAKIN'S employees, (previous John Doe defendants) ELISSA suffered substantial pain and discomfort prior to her death and suffered severe emotional distress and her Estate incurred medical bills and funeral expenses.

131.   At all relevant times, the Defendants, MADISON COUNTY and JOHN D. LAKIN, as Sheriff of Madison County, by and through the acts of its agents and/or employees, each had a duty to exercise care in their interaction with the Decedent, ELISSA A. LINDHORST, and a duty to refrain from willful and wanton conduct in their interaction with Decedent.

132.   At the time and place alleged, Defendants, MADISON COUNTY and JOHN D. LAKIN, as Sheriff of Madison County, by and through the acts of its agents and/or employees, breached their duty to the Decedent, ELISSA A. LINDHORST, by acting in an intentional, willful and wanton manner, negligent and/or in utter disregard for the Decedent's safety in one or more of the following respects:

l.   Failed to provide medical care to the Decedent;

m.   Failed to summon medical care for the Decedent;

n.   Failed to take reasonable action(s) to provide medical are to the Decedent;

o.   Failed to take reasonable action(s) to summon medical care for the Decedent;

p.   Ignored the Decedent's need for medical care;

q.   Unreasonably delayed providing medical care to the Decedent;

r.   Unreasonably delayed summoning medical care to the Decedent;

s.   Unreasonably delayed taking reasonable action(s) to provide medical care to the Decedent;

t.   Unreasonably delayed taking reasonable action(s) to summon medical care for the Decedent;

u.   Failed to summon paramedic and/or other medical professionals in a timely fashion to administer medical treatment to the Decedent; and

v.   Were otherwise willful and wanton and/or negligent.

133.   As a proximate result of one or more of the aforesaid intentional and/or negligent and/or willful and wanton acts and/or omissions, the Decedent, ELISSA A. LINDHORST, sustained injuries of a personal and pecuniary nature prior to her death, and, has she survived, she would have been entitled to bring this action for damages, and this action has survived her pursuant to the provisions of 755 ILCS 5/27-2

134.   This Action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

WHEREFORE, Plaintiff RANA SCHMIDT, as Independent Administrator of the Estate of ELISSA A. LINDHORST, deceased, prays that this Court enters a judgment against the Defendants, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois, and MADISON COUNTY in such sums as will fairly and justly compensate the  Estate of ELISSA A. LINDHORST for the injuries and damages sustained by ELISSA A. LINDHORST prior to her death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**COUNT VIII**
**Indemnification Claim pursuant to 745 ILCS 10/9-102**
**Defendants MADISON COUNTY and JOHN D. LAKIN**

135.   The acts of the individual Defendants who were deputies, correctional officers and jail employees of the Madison County Sheriff, described in the above claims, were willful and wanton, and committed in the scope of employment.

136.   At all relevant times, the Defendants who were deputies, correctional officers and jail employees of the Madison County Sheriff were acting under color of law.

137.   Defendant MADISON COUNTY is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

138.   The Defendant, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois , pursuant to Illinois law, including but not limited to the provisions found in  55 ILCS 5/3-6015, 55 ILCS 5/3-6016 and 745 ILCS 10/9-102, is liable as principal for all torts committed by his employees/agents and must indemnify them.

139.   The Defendant, MADISON COUNTY, pursuant to Illinois law, including by not limited to the provisions found in 55 ILCS 5/5-1002 and 745 ILCS 10/9-102, must indemnify the Defendants, JOHN D. LAKIN, as the Sheriff of Madison County, Illinois,  KATHY L. NODINE, ALISIA RUSHING, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE,  DEPUTY GOODWIN, DEPUTY CALDWELL, DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, DEPUTY WALLENDORFF,DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING.

WHEREFORE, Plaintiff as the Independent Administrator of the Estate of ELLISA A. LINDHORST, Deceased, pursuant to 55 ILCS 5/3-6015, 55 ILCS 5/3-6016, 55 ILCS 5/5-1002, 745 ILCS 10/9-102 and *Carver v. Sheriff    of LaSalle County*, 324 F.3d 947 (7th Cir. 2003), demands judgment against Defendants, MADISON COUNTY and JOHN D. LAKIN, in the amounts awarded to the Plaintiff against MADISON COUNTY, JOHN D. LAKIN, KATHY L. NODINE, ALISIA RUSHING, DEPUTY HURST, DEPUTY PAULDA, SGT. SARHAGE,  DEPUTY GOODWIN, DEPUTY CALDWELL,

DEPUTY DECKER, LT. FOSTER, SGT. RICHERT, DEPUTY WILSON, DEPUTY WILSON, LT. COURT, SGT. BARDELMEIER, REBECCA McNAUGHTON, as Special Representative of Estate of Sgt. McNaughton, DEPUTY WALLENDORFF, DEPUTY BURDEN, DEPUTY WHITECOTTON, and DEPUTY HARING, and for whatever additional relief this Court deems just and appropriate.

**Damages**

A. The Estate of ELISSA A. LINDHORST has sustained the following damages:

1. funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;

2. loss of prospective net Estate accumulations;

3. decedent's conscious pain and suffering and the inherent value of life;

4. pre- and post-judgment interest; and

5. loss of earnings of Elissa from the date of her death, less lost support of her survivors excluding contributions in kind with interest.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, the Plaintiffs seek judgment as follows:

A.    Compensatory damages against each of the Defendants herein;

B.    Punitive damages against Defendants sued individually;

C.    Attorney's fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

D.    A trial by jury on all issues so triable;

E.    Such further relief as the Court deems just and proper.


Respectfully Submitted,

*s/Louis J. Meyer*
Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
t. 309.713.3751
f. 312.585.7803
e. louismeyer@meyerkiss.com

*s/ Daniel P. Kiss*
Daniel P. Kiss
MEYER & KISS, LLC
53 West Jackson Blvd., Suite 724
Chicago, Illinois 60604
t. 312.765.0100
f. 312.785.7803
e. dankiss@meyerkiss.com